IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| AMBUR HALE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:18-CV-097-M-BQ |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE and | § | |
| JONATHAN EASTEP, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Texas Department of Criminal Justice (TDCJ) and Jonathan

Eastep's "Motion for Summary Judgment" (ECF No. 38) and Plaintiff Ambur Hale's "Response

in Opposition." ECF No. 45.[1] The United States District Judge referred this case to the United

States Magistrate Judge for pretrial management, including decisions for non-dispositive matters

and findings and recommendations as to dispositive matters. ECF No. 44.

Plaintiff Ambur Hale, a TDCJ correctional officer holding the rank of sergeant, asserts

three claims against TDCJ and Eastep. *See* ECF No. 16. Hale first sues TDCJ for sexual

harassment and discrimination under Title VII, alleging that Eastep sexually harassed her while

both were employed by TDCJ. Am. Compl. 3, 8, ECF No. 16. Hale claims the harassment began

in April 2016 and culminated with Eastep trapping Hale against a fence and pressing his clothed

penis against her body in June 2016. *Id.* Hale next asserts that after she filed a complaint against

Eastep, her TDCJ supervisors retaliated by (1) performing "walkabouts" of her building on

---

[1] The undersigned notes that Hale's response brief complies with Local Rule 56.5(b)'s length requirement, which this Court established as the limit for responses to summary judgment motions. *See* ECF No. 28.

consecutive days and (2) placing her on probation following a use of force incident involving an inmate and another correctional officer.[2] *Id.* at 6–7, 9–10. Finally, Hale alleges a 42 U.S.C. § 1983 claim against Eastep, contending he violated her Fourteenth Amendment rights by subjecting her to sexual discrimination and a hostile work environment. *Id.* at 10–12. For the reasons that follow, the undersigned recommends that the District Court **GRANT in part and DENY in part** Defendants' motion.

## I.     Summary Judgment Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" when it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To determine whether a dispute is "genuine," courts "consider all facts and evidence in the light most favorable to the nonmoving party[,] . . . draw all reasonable inferences in favor of the nonmoving party[,] . . . [and] disregard all evidence favorable to the moving party that the jury is not required to believe." *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013) (quotations and internal citations omitted).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When

---

[2] In her brief opposing summary judgment, Hale asserts the additional claim that TDCJ retaliated against her by assigning her to the position of "utility sergeant." Pl.'s Br. in Supp. of her Resp. to Defs.' Mot. Summ. J. 36–37, ECF No. 46 [hereinafter Pl. Br.].

the nonmovant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the nonmovant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)).  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it need not negate the elements of the nonmovant's case. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014).  Once a movant satisfies its initial burden, the nonmovant must go beyond the pleadings and designate specific facts demonstrating that a genuine issue remains for trial. *See Celotex Corp.*, 477 U.S. at 325.

If the movant will have the burden of proof on a claim or defense at trial, it "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means it must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923–24 (N.D. Tex. 2009) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

## II.   Background

The parties do not, at this stage of the proceedings, meaningfully dispute the facts underlying Hale's claims.  Consistent with the standard for summary judgment, TDCJ and Eastep present arguments with the general assumption that events occurred as Hale claims, with the

exception of admitting that Eastep pressed his clothed penis against Hale's body. *See, e.g.*, Defs.'
Br. in Supp. of Defs.' Mot. Summ. J. 10–12, 16, ECF No. 39 [hereinafter Defs. Br.]. Thus, the
Court's statement of facts will generally track Hale's allegations and her statement of material
facts.[3] The Court also observes that TDCJ and Eastep's recitation of material facts is somewhat
perfunctory, and their citations to the record in many instances do not materially assist the Court
in navigating their appendix, which exceeds 490 pages.[4] *See* App. to Defs.' Br. in Supp. of Defs.'
Mot. Summ. J., ECF No. 40 [hereinafter Defs. App.].

Hale is employed by TDCJ as a correctional officer at the Allred Unit in Wichita Falls,
Texas. App. to Pl.'s Resp. to Defs.' Mot. Summ. J. 4–5, ECF No. 47 [hereinafter Pl. App.]; Defs.
Br. 9. She began working at the Allred Unit in 2006, was promoted to sergeant in 2013, and is
currently serving as a sergeant on the Allred Unit's training staff at an offsite college. Pl. App. 4–
5, 10–13; Defs. Br. 10. In 2016, the relevant period for Hale's claims herein, Hale was under
Major Jonathan Eastep's command in the general population section of the Allred Unit. Pl. App.
26. Eastep did not directly supervise Hale, but she was a subordinate within his chain of command;
TDCJ's command structure consists of, in descending order of rank: Warden, Assistant Warden,
Major, Captain, Lieutenant, Sergeant, and Correctional Officers. *Id.* at 95.

---

[3] The Court notes that Hale's statement of facts includes certain items of dubious relevance. Specifically, Hale's brief
mentions Eastep's salary while he was employed by TDCJ and his income following his departure from TDCJ. Pl.
Br. 15. Eastep's income, either as a major at TDCJ or as a part-time worker, presents no material fact relevant to
determining whether TDCJ or Eastep are entitled to summary judgment on Hale's claims.

[4] Rule 56 does not require courts to sift through the summary judgment record in search of evidence that may support
a party's position. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *De la O v. Housing Auth. of the City of El
Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ("Judges are not like pigs, hunting for truffles buried in briefs." (internal
quotation marks omitted)).

### III.    Summary Judgment Record

#### A. The Alleged Harassment

Hale claims that Eastep began sexually harassing her in April 2016.[5] *Id.* at 27. Specifically, Hale alleges that Eastep: (1) grabbed her hand and tried to kiss it; (2) asked her if she liked having her toes sucked; and (3) attempted to hug her on multiple occasions. *Id.* at 27–29, 31, 33–34, 36, 207–08.

On June 15, 2016, Eastep allegedly trapped Hale against a chain-link fence by placing his arms around her while grabbing the fence. *Id.* at 172. Eastep then pushed his groin against Hale's buttocks in a manner that pressed his clothed penis against her body and said, "What is that?" in a low, whispering voice. *Id.* at 172–73.[6] Hale states she spun under Eastep's arm and asked, "What are you doing?" (*Id.* at 173), to which Eastep responded by stating that there was a red softball-sized spot on the floor, and that he wanted to know what it was. *Id.* at 128, 173. Shortly after the incident, Hale claims she told Captain Miller—who was in her direct chain of command—what had occurred, but that he did not provide her with any advice or direction concerning what she should do. *Id.* at 45.

A TDCJ surveillance camera captured the fence incident. *Id.* at 282; Defs. App. 493.[7] The video shows Eastep walking into view with his hand on the back of a female pushing a gurney.

---

[5] The parties do not provide exact dates for when the alleged harassment began, but both parties reference April 2016 in connection with the start of the alleged incidents of harassment. Defs. Br. 19, 26–28; Pl. Br. 9, 15, 28, 43, 56. The Court will assume that the alleged harassment began in April 2016.

[6] In her "Statement of Relevant Material Facts," Hale mischaracterizes Eastep's deposition testimony regarding the incident, claiming he "does not deny pushing his penis against Hale." Pl. Br. 8. To the contrary, Eastep denied, to the best of his memory, *any* contact with Hale during the fence incident. *See* Pl. App. 128-29 ("Q: And did any part of you come in contact with Ms. Hale? A: Not that I recall, no, ma'am. Q: No part of your belly, no part of your leg, no part of -- A: I don't recall, no, ma'am. Q: -- your genitals, nothing? A: No, ma'am. Q: So as we sit here today, your testimony is no part of your body came in contact with any part of Ms. Hale on this -- this video? A: That I recall, no, ma'am."). Nevertheless, the Court will draw all reasonable inferences and consider all facts and evidence in the light most favorable to Hale.

[7] The video is Exhibit W of Plaintiff's Appendix and Exhibit H of Defendants' Appendix.

Hale is standing in front of a chain-link fence, speaking with a correctional officer working at a desk behind the fence. Eastep breaks away from the gurney and approaches Hale. As Hale begins to turn away from the fence, Eastep reaches her and places both of his hands on the fence at roughly the same height as Hale's head. Eastep's arms bracket Hale, with Eastep behind her, and the fence to her front. Immediately after placing his hands on the fence, Eastep's right knee flexes slightly and his hips move toward Hale. Hale turns around to face Eastep and ducks under his left arm. Eastep then drops his left arm as Hale gestures and begins speaking with him.[8] Eastep looks down at the floor while Hale continues speaking to him. Hale and Eastep then walk away in different directions. In the video, no red spot can be seen on the floor where Hale and Eastep had been standing.

## B. The Investigations

On June 20, 2016, Hale filed an Equal Employment Opportunity (EEO) complaint with TDCJ's human resources headquarters regarding the fence incident. Pl. App. 47, 197–98. Ten days later, Cynthia Barnes, a TDCJ human resources specialist, reviewed Hale's complaint and the surveillance footage. *Id.* at 131, 143–45, 148. Based on her review of the video, Barnes concluded that Eastep blocked Hale by using his arms, moved his groin toward Hale, and that contact had been made between Eastep's groin and Hale's body. *Id.* at 145. As a result of her conclusions, Barnes recommended that Eastep immediately limit all contact with Hale. *Id.* TDCJ took remedial action on June 30, 2016, which "separate[d] [Hale] and [Eastep] within their work location" and required that Eastep "not have any contact with [Hale] unless in the presence of another ranking officer." *Id.* at 210. On July 1, Warden Wathen of the Allred Unit met with Hale

---

[8] The video's framerate drops at this point, making it difficult to determine whether their conversation was a confrontation or a calm discussion. Immediately prior to the framerate issues, the video shows Hale making a gesture with her hand that could be interpreted as demonstrating anger or surprise.

and told her to treat Eastep "professionally." *Id.* at 211. During his deposition, Eastep testified that he did not recall having a similar meeting with the Warden.[9] *Id.* at 114–16.

That same day, following Barnes's initial review, TDCJ assigned EEO investigator Gary McClendon the task of investigating Hale's claim. Defs. App. 6; Defs. Br. 11. McClendon interviewed Hale, Eastep, and a number of other correctional officers, and he reviewed video of the fence incident. Pl. App. 285–86. During McClendon's interview with Eastep, Eastep claimed that he approached Hale after seeing blood on the floor and intended to counsel her. Defs. App. 27. Eastep explained to McClendon that he placed his arms around Hale to prevent their discussion from being overheard, and he denied making physical contact with Hale or ever engaging in any sexual behavior toward her. *Id.* McClendon appears to have completed his investigation on July 20, 2016, concluding that Eastep did not violate any rules but nevertheless recommending that Eastep be counseled concerning social boundaries. *Id.* at 9, 22–24, 42. On July 28, 2016, TDCJ's EEO office sent notification to Hale of its decision finding no violation. *Id.* at 3.

Thereafter, Hale contacted the Wichita Falls Police Department and filed a criminal complaint concerning the fence incident. Pl. App. 58. TDCJ's Office of the Inspector General (OIG) investigated Hale's complaint and concluded that only Hale would have considered Eastep's actions offensive. *Id.* at 153, 155–56, 165.

### C. The Alleged Retaliation

Hale claims TDCJ retaliated against her in three different ways after she filed her EEO complaint. Pl. Br. 36–37. She initially asserts that in early July 2016—shortly after the EEO investigation began—Eastep and Warden Anders did a morning "walkabout" inspection of her building, during which they found pigeon feathers on a walkway. *Id.*; Am. Compl. 9–10; Pl. App.

---

[9] TDCJ does not dispute or otherwise address Hale's assertion that Eastep did not recall such a conversation.

278. Warden Anders instructed Eastep to write up Hale, but Eastep refused and instead verbally counseled her and warned her that she could be written up. Pl. App. 53–54. Hale alleges that Eastep did another walkabout the following day, without Warden Anders being present, which Hale asserts is uncommon and only occurs when people are being targeted. *Id.* at 56–57, 278. Additionally, for a month following those walkabouts, Hale says she was not permitted to attend shift turnouts—briefings in which the events of the prior shift are discussed—because she needed to ensure her building was clean.[10] *Id.* at 54.

Second, Hale argues that TDCJ retaliated by reassigning her to the position of "utility sergeant" after the EEO investigation ended.[11] *Id.* at 49–50; Pl. Br. 36–37. Hale acknowledges, however, that the assignment was part of a normal rotation for sergeants. Pl. App. 50. Hale testified in her deposition that this role meant she spent more time in the captains' office, which is adjacent to Eastep's office, meaning she "would constantly have to be next to [Eastep]." *Id.* at 50–51.

Lastly, Hale claims her placement on probation for three months following a use of force incident was done in retaliation for her EEO complaint. Am. Compl. 9; Pl. Br. 36–37. On July 9, 2016, a use of force incident occurred involving an offender and a correctional officer in Hale's building, which resulted in the correctional officer sustaining injuries. Pl. App. 278–79; Defs. App. 125, 286–87. Major David West began investigating the incident on July 26. Defs. App. 125. Hale acknowledged that these investigations are standard responses when an officer is injured during a use of force incident. *Id.* at 286–87. Major West determined that Hale

---

[10] Hale does not indicate who prohibited her from attending the turnouts, nor is it clear whether she was expressly prohibited from attending the turnouts or if she was simply unable to attend due to other obligations.

[11] In setting out her claim for retaliation in her Amended Complaint, Hale did not include this reassignment among the alleged retaliatory acts. *See* Am. Compl. 9–10.

failed to: (1) initiate the Incident Command System; (2) call for an "A" response; and (3) call for a video camera to record the use of force. *Id.* at 125. As a result, Major West charged Hale with a level 2 violation. *Id.* at 118–19; Pl. App. 281. Although Major West did not interview Hale, the disciplinary process provided Hale with the opportunity to make a written statement, participate in a pre-hearing interview with a different investigator, and appear at a hearing before the reprimanding authority, i.e., Warden Richardson.[12] Defs. App. 119, 122–23. Apparently availing herself of the opportunity for a hearing, Warden Richardson acquitted Hale on the charged level 2 violation following a hearing, but found her guilty of a lesser, level 4 violation for substandard duty performance. *Id.* at 118; Pl. App. 281. Warden Richardson concluded that Hale did, in fact, initiate the Incident Command System, but found her performance substandard because she failed "to take control of the situation prior to it escalating to a use of force." Defs. App. 118; Pl. App. 281. As a result of his findings, Warden Richardson placed Hale on three months' probation, during which time she was not eligible for merit raises or promotions. Defs. App. 118; Pl. App. 74, 281.

## IV.    **Analysis**

Hale claims that TDCJ is liable under Title VII because (1) Eastep's alleged behavior created a hostile work environment and (2) TDCJ retaliated against her for reporting Eastep's alleged harassment. *See* Am. Compl. 8–10. Hale also seeks to impose individual liability on Eastep under 42 U.S.C. § 1983 for violating her right to equal protection under the Fourteenth Amendment by subjecting her to sexual harassment. *Id.* at 10–12.

---

[12] It appears that Warden Richardson may have been a new warden in the Allred Unit; the summary judgment record indicates that the unit had experienced a change in wardens, and this transition delayed Hale's hearing. Defs. App. 124. TDCJ alleges, without citation to the record, that Warden Richardson was new to the Allred Unit. Defs. Br. 31.

### A. Title VII – Hostile Work Environment

Hale's Title VII claim is premised on the theory that Eastep's alleged behavior created a hostile work environment. Specifically, Hale points to the fence incident, a comment by Eastep asking whether Hale liked having her toes sucked, Eastep grabbing Hale's hand and attempting to kiss it, and Eastep's attempts to hug Hale on various occasions as actions that created a hostile work environment. *Id.* at 3; Pl. Br. 6–8, 22. TDCJ argues this claim fails because the alleged harassment did not create a hostile work environment as a matter of law, in that it did not affect a term, condition, or privilege of Hale's employment as it was neither severe nor pervasive enough to be actionable under Title VII. Defs. Br. 16–22. TDCJ further asserts that it has an affirmative defense to Hale's claim, i.e., that it instituted suitable policies and programs regarding sexual harassment and Hale unreasonably failed to take advantage of preventative or corrective opportunities. *Id.* at 22–28. After carefully considering the summary judgment record, the undersigned concludes that TDCJ is not entitled to summary judgment on Hale's Title VII claim because genuine issues of material fact exist as to both Hale's underlying claim and TDCJ's affirmative defense.

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to [her] compensation, terms, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Its prohibitions include discriminatory actions that create a hostile or abusive work environment. *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67 (1986). To establish a Title VII claim based on a sexually hostile work environment theory, a plaintiff must prove four elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the

harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment."[13] *Seibert v. Jackson Cty, Miss.*, 851 F.3d 430, 437 (5th Cir. 2017) (internal quotation marks omitted). Where the alleged harasser is a supervisor with authority over the plaintiff, the employer is subject to vicarious liability arising from the supervisor's actions. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Under such circumstances, however, employers may raise an affirmative defense against vicarious liability. *See id.*; *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

### 1. The Alleged Harassment Affected a Term, Condition, or Privilege of Hale's Employment

TDCJ argues that Hale cannot establish the fourth element—that the harassment affected a term, condition, or privilege of her employment—as a matter of law. Defs. Br. 16–22. Sexual harassment becomes actionable when it is "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor*, 477 U.S. at 67 (alteration in original) (internal quotation marks omitted). The Supreme Court has made clear that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524

---

[13] A fifth element applies when the alleged harassment did not involve a supervisor. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 n.3 (5th Cir. 1999) (noting that when the alleged harasser is a co-worker as opposed to a supervisor, a plaintiff must also prove that the employer "knew or should have known of the harassment in question and failed to take prompt remedial action."). Because the parties do not dispute that Eastep had supervisory authority over Hale, that element does not apply.

U.S. at 788 (internal quotation marks and citations omitted). The conduct at issue must be extreme; Title VII is not a "general civility code." *Id.* (internal quotation marks omitted).

"[W]hether an environment is hostile or abusive can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (internal quotation marks omitted). Only harassment that is both objectively and subjectively abusive can create an actionable hostile work environment. *Faragher*, 524 U.S. at 787 ("[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."). "Determining whether a hostile-work environment exists takes into account the totality of the circumstances, including such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance." *Garvin v. S.W. Corr., L.L.C.*, 391 F. Supp. 3d 640, 651 (N.D. Tex. 2019) (quoting *Donaldson v. CDB, Inc.*, 335 F. App'x 494, 501 (5th Cir. 2009)) (internal alteration brackets omitted); *see also Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (setting out same factors); *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005) (citing *Harris*, 510 U.S. at 23) (same). Isolated incidents can establish a hostile work environment if they are sufficiently egregious. *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 435 (5th Cir. 2005) (citing *Faragher*, 524 U.S. at 788).

Based on the summary judgment record before the Court, the undersigned concludes that a reasonable jury could determine Eastep's conduct subjected Hale to a work environment that was objectively offensive. It is undisputed that Hale's claim relies on only a handful of incidents, making the harassment infrequent. It is similarly uncontradicted that Hale's work performance

was not significantly impacted. And it is also true that Hale's workplace competence does not seem to have been undermined—that is to say, neither TDCJ nor her coworkers perceived her as incompetent in her duties as a result of the harassment. Hale was subjected, however, to a single instance of particularly egregious behavior that a reasonable person could perceive as both physically threatening and humiliating. Taking the facts in the light most favorable to Hale, Eastep walked up behind Hale, placed his arms on each side of her to trap her against the fence, pushed his clothed penis against her buttocks, and whispered "What is that?" into her ear before she forced her way under his arm and confronted him.[14] "Undoubtedly, the deliberate and unwanted touching" of one's intimate body parts "can constitution severe sexual harassment." *Harvill*, 433 F.3d at 436 (citing *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001)) ("[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment."). The Court finds that this incident could, if true, constitute conduct sufficiently egregious that it created an objectively hostile or abusive work environment.

Another district court, presented with a similar scenario, reached the same conclusion. In *Guadalajara v. Honeywell Int'l, Inc.*, the plaintiff claimed that a coworker placed his hand on plaintiff's buttocks and pushed two fingers against plaintiff's anus through his clothing. 224 F. Supp. 3d 488, 494 (W.D. Tex. 2016). The district court noted that the evidence suggested the contact was intentional and acknowledged the severe nature of intentional contact with an intimate body part. *Id.* at 502. The district court therefore concluded that this act, standing alone, was

---

[14] The Court notes that the video of the incident remains ambiguous regarding the details of what took place after Eastep placed his hands on the fence and whether his groin contacted Hale. The video evidence, however, does not clearly contradict Hale's version of events, and it is for a factfinder to determine whether Hale's allegations are credible. *See Chacon v. Copeland*, 577 F. App'x 355, 359 (5th Cir. 2014) (per curiam) (citing *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)) (noting that, at the summary judgment stage, courts assume the validity of a plaintiff's version of facts unless "video evidence undeniably contradicts the plaintiff's version of the facts such that no reasonable jury could believe it").

adequately severe to create a genuine issue of material fact that precluded summary judgment on the employee's Title VII hostile work environment claim. *Id.*

The Court sees no meaningful distinction, in terms of severity of conduct, between an individual pushing his fingers against a victim's anus, over his clothes, and Eastep pushing his clothed penis against Hale's buttocks in what could reasonably be viewed as a simulated sex act.[15] *See id.* at 502 (citing *Harvill*, 433 F.3d at 435–36) (concluding that, because the alleged touching of an intimate body part is among the most severe types of harassment, employer "cannot successfully overcome Plaintiff's claim with summary-judgment evidence showing lack of severity or pervasiveness").

In making its argument that Hale did not experience a hostile work environment, TDCJ leans heavily on the rationale and fact scenarios in Fifth Circuit cases *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871 (5th Cir. 1999), *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317 (5th Cir. 2004), and their progeny. Defs. Br. 19–22. Both *Shepherd* and *Hockman* involved severe forms of harassment that their respective panels nonetheless held was not actionable. 168 F.3d at 872, 874–75; 407 F.3d at 321–22, 329. The Fifth Circuit, however, called the validity of both decisions into question when it determined that *Shepherd* and *Hockman* applied the wrong legal standard to Title VII hostile work environment claims because they required that harassment be both severe *and* pervasive. *Harvill*, 433 F.3d at 435–36. Later, the Fifth Circuit reiterated that *Shepherd* and *Hockman* utilized an improper standard and reminded courts that "applying the wrong standard can lead to the wrong outcome." *Royal v. CCC & R Tres*

---

[15] During her interview with the OIG investigator, Hale described the incident as "like we were in doggie style up against the fence, standing up in a sexual or it felt like I was in a dirty movie up against the walls [sic] standing up with him pressed up against me." Pl. App. 175.

*Arboles, L.L.C.*, 736 F.3d 396, 402–03 (5th Cir. 2013) (noting *Harvill*'s rejection of *Shepherd* and *Hockman*).

TDCJ cites three district court cases as involving facts far more severe or pervasive than those giving rise to Hale's claim, yet each held that the alleged harassment was not actionable. Defs. Br. 20–21 n.2 (citing *Hancock v. Barron Builders & Mgmt. Co., Inc.*, 523 F. Supp. 2d 571 (S.D. Tex. 2007); *Baker v. Starwood Hotel & Resort Worldwide, Inc.*, No. Civ. A. 98-2076, 1999 WL 397405 (E.D. La. June 15, 1999); *Jones v. Seago Manor & Nursing Home*, No. CIV.A. 3:01-CV-2406AH, 2002 WL 31051027 (N.D. Tex. Sept. 11, 2002)). The undersigned finds these cases unpersuasive because they rely, in varying degrees, upon *Shepherd* and/or *Hockman*.

*Hancock* not only modeled its decision after *Shepherd* and *Hockman*—comparing its facts to theirs—it also relied on the same faulty standard requiring that harassment be both severe and pervasive. 523 F. Supp. 2d at 575–76. *Baker* similarly used *Shepherd*'s facts as a guide and, although it often noted the correct standard, nevertheless cited *Shepherd* for the notion that "[c]ourts have set a high bar for what constitutes severe *and* pervasive harassment," leaving open the question of whether it properly applied the standard. 1999 WL 397405, at *3 (emphasis added). Finally, *Jones*, like *Baker*, cited the correct standard but later deviated, referring to the standard as severe and pervasive.[16] 2002 WL 31051027, at *4 ("Had Jackson's verbal taunts continued unabated, a colorable basis for a severe and pervasive hostile work environment might exist."). This again raises questions as to whether *Jones* correctly applied the standard to its facts. Because "applying the wrong standard can lead to the wrong outcome" (*Royal*, 736 F.3d at 403), TDCJ's cases provide no viable basis for granting summary judgment.

---

[16] In doing so, *Jones* incorrectly attributed the severe *and* pervasive standard to an earlier Fifth Circuit case, noting in a parenthetical that "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected employee's opportunity to succeed in the workplace." 2002 WL 31051027, at *4 (citing *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995)).

### 2.  *TDCJ is not Entitled to Summary Judgment on its Affirmative Defense*

Employers may be held vicariously liable by an employee who is the victim of harassment creating a hostile work environment when the harasser is a supervisor with authority over the employee. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. As long as that supervisor's harassment did not lead to an adverse employment action, employers may raise an affirmative defense to liability when they prove, by a preponderance of the evidence, "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *see Ellerth*, 524 U.S. at 765; *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 164 (5th Cir. 2007). Based on the summary judgment record before the Court, it is undisputed that Eastep was Hale's supervisor and the alleged harassment did not lead to an adverse employment action based on the harassment. The question then becomes whether TDCJ has carried its heavy burden to prove the elements of its affirmative defense at the summary judgment stage.

"An employer can satisfy the first prong of the *Ellerth/Faragher* defense by implementing suitable institutional policies and educational programs regarding sexual harassment. *E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 462–63 (5th Cir. 2013) (en banc) (citing *Lauderdale*, 512 F.3d at 164; *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 413 (5th Cir. 2002)). Though proof of "an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law" (*Id.* at 463 (quoting *Burlington Indus.*, 524 U.S. at 765)), courts "often look to an employer's policies and programs in determining whether it took reasonable measures to prevent discriminatory behavior." *Id.* at 463 (citing *Harvill*, 433 F.3d at 437–39). But the mere existence

of a policy is not enough; "generic policies that offer no specific complaint procedure may be insufficient to satisfy the *Ellerth/Faragher* defense." *Id.* The Fifth Circuit, en banc, has placed great emphasis on an employer's failure to create an antiharassment policy that was substantively adequate and sufficiently promulgated among employees. *Boh Bros. Constr.*, 731 F.3d at 463–66. A later Fifth Circuit decision noted that "[b]oth the harasser's knowledge of the policy and the victim's awareness of it (and of associated complaint procedures) are relevant to whether the [employer] acted reasonably," with the issue in that case being "whether the evidence adduced on summary judgment was sufficient to demonstrate that the board took reasonable care to prevent sexual harassment through promulgation of a policy and complaint mechanism." *Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 210 (5th Cir. 2016).

TDCJ argues this Court should grant summary judgment because it prevails on its affirmative defense pursuant to *Faragher*, 524 U.S. 775, and *Ellerth*, 524 U.S. 742. Defs. Br. 22–28. TDCJ posits that its policies and educational programs satisfy the defense's first prong, citing to the Fifth Circuit's holding in *Lauderdale*, 512 F.3d at 164, which held that TDCJ's policies and programs in existence at that time met the first element's requirements. Defs. Br. 24. TDCJ has not, however, included its current policies within the summary judgment appendix supporting its motion. Considering that the Fifth Circuit decided *Lauderdale* in 2007, the Court finds TDCJ has failed to satisfy its summary judgment burden simply by citing *Lauderdale*. The Fifth Circuit's en banc decisions in *Boh Brothers Construction* and *Pullen* clearly demonstrate the importance of having antiharassment policies in place that demonstrate an employer took reasonable measures to prevent discriminatory behavior. 731 F.3d at 462–66; 830 F.3d at 210–13. TDCJ has the burden of proving "beyond peradventure all of the essential elements of" its affirmative defense. *Bank One, Tex., N.A.*, 878 F. Supp. at 962 (internal quotation marks omitted). TDCJ's policies are

17

central to proving the first element of its affirmative defense, yet it did not include them in its summary judgment evidence. That failure necessarily precludes a finding that TDCJ has carried its burden.[17]

Even assuming the summary judgment record before the Court supports a finding that TDCJ implemented suitable policies and programs regarding sexual harassment, e.g., the policy submitted by Hale in her appendix,[18] the record nevertheless shows a disputed material fact as to the second element, i.e., whether Hale unreasonably failed to take advantage of the preventative and corrective opportunities that TDCJ provided. TDCJ appears to fault Hale for not reporting Eastep's April behavior that preceded the fence incident in June. Defs. Br. 26–28. While it is true that Hale failed to report those incidents when they happened, they do not necessarily impact Hale's claim concerning the fence incident. *See Wyatt*, 297 F.3d at 413–14 (holding that employer was not entitled to summary judgment on harassment that plaintiff reported, even though it was entitled to summary judgment on the harassment plaintiff did not report). The standard is whether Hale "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *see Ellerth*, 524 U.S. at 765. The record shows that, after the incident, Hale informed her supervisor, Captain Miller, she

---

[17] The Court has located only the first page of TDCJ's purported sexual harassment policy in the appendix offered in support of its motion for summary judgment. *See* Defs. App. 107. Other than its reference to the previous policy reviewed by the Fifth Circuit in *Lauderdale*, TDCJ cites nothing in the summary judgment record establishing a policy in effect during 2016 that demonstrates the "exercise[] [of] reasonable care to prevent and correct promptly any sexually harassing behavior," e.g., definitions of prohibited conduct, reporting procedures, agency responsibilities in responding to claims, employee options in remedying claims, etc. As noted above, this dearth of proof proves fatal to TDCJ establishing its affirmative defense. While the undersigned notes that Hale has included in her appendix an apparent complete copy of a November 1, 2014, TDCJ "Sexual Harassment and Discourteous Conduct of a Sexual Nature" policy (*see* Pl. App. 212–225), neither party has provided any evidence demonstrating this is the TDCJ policy in existence at the time of the events giving rise to Hale's claims. As such, TDCJ has failed to establish the first required element of the *Faragher* and *Ellerth* affirmative defense.

[18] Or that TDCJ took prompt remedial action by investigating Hale's claims after receiving her complaints. *See Lauderdale*, 512 F.3d at 165 (finding that TDCJ's "standing policies on sexual harassment, its training program, and its prompt action following" plaintiff's complaint satisfied *Ellerth/Faragher's* first prong.).

reported it to TDCJ's human resources headquarters, and she reported it to the police, which led to an investigation by OIG. Although these actions may not have fully complied with every jot and tittle of TDCJ's sexual harassment reporting policies, they nonetheless put TDCJ on notice as to what occurred and triggered an investigation, thus satisfying the fundamental purpose of the policy. This raises a genuine issue of material fact concerning whether Hale reasonably availed herself of available preventative or corrective opportunities. *See Watts*, 170 F.3d at 511 (holding that employee's report of alleged sexual harassment through union grievance procedure, rather than employer's sexual harassment policies, "comport[ed] with the *Burlington/Faragher* rubric . . . because both the employer and union procedures are corrective mechanisms designed to avoid harm," and thereby raised a material fact issue as to whether employee reasonably availed herself of corrective opportunities). Given that TDCJ does not carry its burden as to either prong of the *Ellerth/Faragher* defense, it is not entitled to summary judgment on Hale's sexually hostile work environment claim. *See Boh Bros. Constr.*, 731 F.3d at 462 ("The employer bears the burden to prove *both* elements by a preponderance of the evidence." (emphasis in original)).

The undersigned therefore recommends that the district judge deny TDCJ's motion for summary judgment on Hale's Title VII hostile work environment claim because the summary judgment record raises a disputed material fact issue concerning whether Hale experienced severe harassment that created a hostile work environment. In addition, TDCJ has not carried its burden to show that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and a disputed material fact exists regarding whether Hale reasonably availed herself of preventative or corrective opportunities.[19]

---

[19] Hale alleges a sexually hostile work environment claim against TDCJ based on events occurring during two discrete time periods: (1) April 2016 and (2) the June 2016 fence incident. The summary judgment record does not support a finding that the events alleged to have occurred in April, standing alone, satisfy the severity or pervasive requirement for a hostile work environment. While boorish and repugnant, and certainly inappropriate for the workplace,

**B. Title VII – Retaliation**

Hale claims that TDCJ retaliated against her after she submitted her EEO complaint. Specifically, Hale cites: (1) the two consecutive days of walkabouts, which resulted in verbal counseling and her removal from shift-turnout briefings; (2) her assignment to utility sergeant, which put her in close proximity to Eastep; and (3) her placement on probation following a use of force incident. Pl. Br. 36–37. Hale claims these acts constitute "adverse employment actions," relying on the proposition that an adverse employment action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 36 (quoting *Trevino v. Ctr. for Health Care Servs.*, Civil Action No. SA-08-CV-0140 NN, 2009 WL 2406196, at *3 (W.D. Tex. Aug. 3, 2009)).

TDCJ argues that Hale did not suffer an adverse employment action sufficient to trigger Title VII's protection against retaliation, noting that only decisions relating to hiring, firing, and promoting constitute adverse employment actions. Defs. Br. 28–30. TDCJ points out that Hale's reassignment to utility sergeant would be a "purely lateral transfer," which is not an adverse employment action. *Id.* at 29 (quoting *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir.

---

generalized accounts of Eastep attempting to hug Hale or grab and kiss her hand, or asking if she liked to have her toes sucked, do not satisfy the minimal legal threshold for sufficiently severe or pervasive conduct creating a hostile work environment. *See, e.g., Wilson v. Republic Nat'l Indus. of Tex., LP*, CIVIL ACTION NO. 3:19-CV-0593-B, 2019 WL 3859666, at *4 (N.D. Tex. Aug. 16, 2019) (holding that three distinct incidents occurring over three months, including comments made insinuating plaintiff was a prostitute, though humiliating and inappropriate, were not adequate to create a sexually hostile work environment); *Abbood v. Tex. Health & Human Servs. Comm'n*, NO. 4:17-CV-909-A, 2018 WL 6267925, at *4 (N.D. Tex. Nov. 30, 2018) (determining that coworker's sexually-charged comments directed at plaintiff, including one indicating that coworker had an erection, did not establish sufficient severity or pervasiveness for hostile environment claim); *Chin v. Crete Carrier Corp.*, Civil Action No. 3:15-CV-1235-D, 2017 WL 3434293, at *4 (N.D. Tex. Aug. 10, 2017) (granting summary judgment on male employee's sexually hostile work environment claim because male supervisor's conduct, which included exposing his genitals to employee while urinating into a jug and making sexual advances, did not rise to the level of severe or pervasive harassment). Because the undersigned has found, however, that the June 2016 fence incident, accepting Hale's account as true and construing the evidence most favorably to her, constitutes conduct sufficiently severe to survive summary judgment as to a hostile work environment claim, the Court need not consider at this stage the cumulative effect of Eastep's behavior as a whole in creating a possible hostile work environment or the validity of TDCJ's affirmative defense in relation to Eastep's alleged, and belatedly reported, April 2016 conduct.

2016)).  TDCJ also argues that because Hale successfully completed her three-month probation period without issue, it too was not an adverse employment action; however, TDCJ does not address Hale's claim concerning the walkabouts and removal from shift-turnout briefings.  *Id.* TDCJ further argues that it had legitimate, non-retaliatory reasons for its actions, and Hale cannot show that its reasons were pretextual.  *Id.* at 30–32.

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because [s]he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  Title VII retaliation claims are examined under a burden-shifting analysis.  *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).  After an employee demonstrates a prima facie case of retaliation, and the "employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to demonstrate that the employer's stated reason is actually a pretext for retaliation."  *Id.* at 427 (internal quotation marks and alteration brackets omitted).  The employee may establish pretext "by showing that the adverse action would not have occurred but for the employer's retaliatory motive."  *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotation marks omitted).

To establish a prima facie case of retaliation, the employee must show "(1) that [s]he participated in an activity protected by Title VII, (2) that [her] employer took an adverse employment action against [her], and (3) that there is a causal connection between the adverse employment action and the protected activity."  *Id.* (citing *Shackelford v. Deloitte & Touche, LLP*,

190 F.3d 398, 408 (5th Cir. 1999)). The only element challenged in TDCJ's Motion for Summary Judgment is whether Hale suffered an adverse employment action.

### 1. Hale Suffered an Adverse Employment Action

"For purposes of a Title VII retaliation claim, the allegedly retaliatory action must produce 'an injury or harm' sufficient to 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Jiang v. Tex. Comm'n on Envtl. Quality*, 1:17-CV-739-RP, 2018 WL 8244906, at *1 (W.D. Tex. Sept. 19, 2018) (quoting *Burlington N.*, 548 U.S. at 68). The Fifth Circuit has "made clear that an adverse employment action is an 'ultimate employment decision' like 'hiring, firing, demoting, promoting, granting leave, and compensating.'" *Henderson v. City of Round Rock*, Case No. 1:19-CV-355-LY, 2019 WL 4785718, at *2 (W.D. Tex. Sept. 27, 2019) (quoting *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Welsh v. Fort Bend Indep. Sch. Dist.*, --- F.3d ---, No. 19-20239, 2019 WL 5588992, at *4 (5th Cir. Oct. 30, 2019) (quoting *Pegram v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)) (internal alterations omitted).

Given this standard, the undersigned concludes that the increased walkabouts, Hale's removal from the shift-turnout briefings, and her reassignment to utility sergeant do not constitute adverse employment actions. As to the walkabouts, Hale never received an official reprimand—TDCJ merely verbally counseled her concerning the feathers observed during the first walkabout. Pl. App. 53–54. Further, although Hale claims two days of walkabouts were evidence of uncommon and increased scrutiny, her claims are unsubstantiated and conclusory, particularly where she received no formal punishment and provides no proof that the increased scrutiny was sufficiently oppressive. *See Browning v. S.W. Research Inst.*, 288 F. App'x 170, 179–80 (5th Cir.

2008); *see also Jiang*, 2018 WL 8244906, at *1 ("Increased scrutiny of an employee's work, without more, is not an adverse action . . . ."). The significance of Hale's removal from the shift-turnout briefings is ambiguous, at best, and she provides no evidence supporting a finding that she suffered any injury or harm arising from it. The Court can only speculate as to how her non-participation in the briefings would have impacted her. Hale bears the burden to demonstrate that she suffered an adverse employment action, and her brief makes only conclusory claims that her removal from shift-turnouts was an adverse employment action. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *superseded on other grounds by* 28 U.S.C. § 636(b)(1)).

Hale's placement on probation is a much closer call on whether it satisfies the requirements of an adverse employment action. It is a question, however, this Court need not decide because, as discussed below, even assuming an adverse employment action, TDCJ has established its entitlement to summary judgment on the entirety of Hale's retaliation claim.

### 2. *TDCJ Provided a Legitimate, Non-Retaliatory Reason for Hale's Discipline*

Under both the ADEA and Title VII, once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to produce evidence demonstrating a legitimate, nondiscriminatory reason for the action taken. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 n.12 (5th Cir. 2010); *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013). An employer satisfies this burden by producing evidence that "taken as true would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Price v. Fed. Express. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (2002)) (emphasis omitted). The burden "is one of production, not persuasion," and

involves no credibility assessment. *Jackson*, 602 F.3d at 378 n.12 (internal quotation marks omitted).

Hale's discipline resulted from an investigation that was automatically triggered when a correctional officer suffered an injury during a use of force incident. Pl. App. 278–79; Defs. App. 286–87. Thus, the investigation itself arose for non-retaliatory reasons. Major West performed the investigation and provided his findings and recommendation to the reprimanding authority. Defs. App. 118, 125. Hale cites Major West's failure to interview her as evidence of retaliatory intent. Pl. Br. 38–39. While Major West did not interview Hale, Hale had the opportunity to make a written statement, participate in a pre-interview hearing with a different investigator, and have a hearing before the reprimanding authority, Warden Richardson. *Id.* at 119, 122–23. The summary judgment record indicates TDCJ in fact conducted such a hearing, after which Warden Richardson rejected Major West's recommendation and at least some of his findings. *Id.* at 118. Warden Richardson found Hale guilty on a lesser offense than the one recommended by Major West, concluding that her performance was substandard in allowing circumstances to escalate to a use of force. *Id.* This evidence provides a sufficient basis for finding that TDCJ has proffered a legitimate, non-retaliatory reason for Hale's placement on probation. The burden therefore shifts back to Hale to prove that TDCJ's justification constitutes pretext.

### 3. *TDCJ's Justification Is Not Pretextual*

Hale claims TDCJ's justification for her discipline is pretextual because Major West conducted a fundamentally inadequate investigation. Pl. Br. 38–39. Hale grounds the entirety of her argument on the position that Major West was biased against her, as demonstrated by his failure to interview Hale or other witnesses she believes were relevant to the investigation, and also by

24

his mistaken reference to Building 3, which was the site of the fence incident with Eastep, rather than Building 7, where the use of force incident occurred.[20] *Id.*

"After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Feist*, 730 F.3d at 454 (internal quotation marks omitted). The employee accomplishes this "by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). "The ultimate question is not one of pretext, but whether a reasonable fact-finder could conclude that the employer would not have [taken the adverse action] 'but for' the employee's decision to engage in an activity protected by Title VII." *Alkhawaldeh*, 851 F.3d at 428 (citing *Feist*, 730 F.3d at 454) (internal citations omitted). To prove pretext, the employee may present evidence of disparate treatment or "that the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Hale's summary judgment proof fails to establish pretext and "but for" causation in relation to her retaliation claim premised on TDCJ's probation decision. Hale claims Major West's conclusions arising from his investigation are not worthy of credence because his investigation was incomplete; however, Hale's argument ignores the fact that Major West was not the ultimate factfinder. Warden Richardson, the true final decisionmaker, apparently agreed with Hale that

---

[20] Hale also mentions an event occurring the day after her deposition in this case. Pl. Br. 39. Hale claims to have had a negative interaction with Warden Smith, an instructor at Allred Unit's training center, where he allegedly questioned her integrity and warned that he would be "watching [her] more closely" because he was "not sure if [she] was the type of person who should be working" for TDCJ. *Id.*; Pl. App. 279–80. The undersigned notes that Hale discussed this alleged exchange under the heading "TDCJ's reason is pretext," rather than asserting that the exchange was itself an adverse employment action. Pl. Br. 38. The undersigned has not considered this alleged exchange in determining whether TDCJ's justification was pretext because it took place one and a half years after the alleged retaliation, i.e., Hale's placement on probation, and did not involve the supervisor who made the allegedly retaliatory decision. In addition, Hale makes no argument demonstrating that this alleged exchange is evidence that her placement on probation was retaliatory.

25

many of Major West's conclusions were wrong. He flatly rejected at least one aspect of Major West's findings and found Hale not guilty of the recommended charge. Defs. App. 118, 125. That Warden Richardson found Hale guilty of a lesser charge, for reasons entirely separate from those articulated by Major West, indicates that Major West's findings played little role in Warden Richardson's decision. Hale does not address this issue or provide proof of a causal link between her protected conduct and the adverse action.[21] Hale must show that her placement on probation would not have occurred but for her complaints about Eastep's behavior. By failing to address any alleged causation between Major West's investigation and Warden Richardson's final conclusions, she cannot establish pretext.

The undersigned recommends that the district court grant summary judgment to TDCJ on Hale's claim of retaliation because the increased walkabouts, Hale's removal from the shift-turnout briefings, and her reassignment to utility sergeant do not amount to adverse employment actions. In addition, Hale has not carried her burden of demonstrating that genuine issues of material fact exist as to whether TDCJ's justification for placing her on probation amounted to pretext.

### C. 42 U.S.C. § 1983 – Defendant Eastep

Hale also alleges that Eastep violated her Fourteenth Amendment rights by subjecting her to a hostile work environment. Am. Compl. 10–12; Pl. Br. 39–48. Eastep seeks summary judgment because: (1) Hale's claim is barred by the statute of limitations; (2) he is entitled to qualified immunity; and (3) Hale's underlying Title VII claim fails. Defs. Br. 32–37. The undersigned recommends that the district court grant summary judgment because Hale's claim is time-barred.

---

[21] Hale does not put forward a "cat's paw" theory of liability concerning the actions of Warden Richardson, so the undersigned has not addressed that issue. *Zamora v. City of Houston*, 798 F.3d 326, 331–33 (5th Cir. 2015) (explaining the cat's paw theory in Title VII retaliation context).

*1.   The Statute of Limitations Bars Hale's § 1983 Claim*

The statute of limitations for a § 1983 claim is two years. *Morrill v. City of Denton*, 693 F. App'x 304, 305–06 (5th Cir. 2017) (noting the statute of limitations for a § 1983 action in Texas is two years from the date the cause of action accrues); *Price v. City of San Antonio*, 431 F.3d 890, 893 (5th Cir. 2005) (holding Texas's statute of limitations period for torts "requires a claim to be brought no later than the same calendar day two years following the accrual of the cause of action"). Eastep argues that Hale's claim is barred because the alleged incident giving rise to her claim against him occurred on June 15, 2016, and Hale filed her initial complaint in this action on July 3, 2018, placing her eighteen days outside the limitations period. Defs. Br. 33–34. Hale responds that the continuing violation theory applies because Eastep continued to subject her to harassment when he performed a solo walkabout of Hale's building, in violation of TDCJ's instructions that he not have any contact with Hale unless another ranking officer was present.[22] Pl. Br. 51–52.

Many hostile work environment claims rely on the continuing violation theory because such claims involve conduct occurring over a lengthy time period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002) (discussing continuing violation theory in context of

---

[22] Hale also argues, in the alternative, that her claim did not accrue until after TDCJ had fully completed its investigation and referred Hale to other agencies. Pl. Br. 52–53. This argument is unavailing for two reasons. First, Hale is arguing that her § 1983 claim against Eastep accrues based on the actions of an entity other than Eastep. To the contrary, Eastep is liable for his own actions and any claim against him accrues based on his conduct. There is no evidence that Eastep is responsible for TDCJ's investigative processes or the information TDCJ provides to complainants. The case upon which Hale relies, *Bell v. City of Dallas*, concerns allegations of due process violations by a municipality and that the municipality's actions determined when the claim accrued, not those of a third party. *See* No. Civ.A.3:02-CV-0029-P, 2002 WL 1822732, at *10 (N.D. Tex. Aug. 7, 2002). Second, and more significantly, the employees' § 1983 claim in *Bell*, which alleged violations of due process rights arising from the employer's denial of a hearing as to the employees' grievance concerning their reclassification, did not accrue until the employees had been denied due process, i.e. their right to a hearing on the grievance. *Id.* In this case, Hale's claim is premised on a violation of the Fourteenth Amendment's Equal Protection Clause arising from Eastep's alleged creation of a sexually hostile work environment. Thus, Hale's claim accrued *when Eastep's alleged actions created a hostile work environment*. As discussed below, any expansion of the actionable time frame must be based on the continuing violation theory, which Hale has failed to establish.

limitations period concerning filing of discrimination charge pursuant to 42 U.S.C. § 2000e-5(e)(1)). "Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim 'is comprised of a series of separate acts that collectively constitute one unlawful employment practice.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R.*, 536 U.S. at 115). So long as "an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R.*, 536 U.S. at 117; *see Stewart*, 586 F.3d at 328; *Garvin v. S.W. Corr., L.L.C.*, 391 F. Supp. 3d 640, 649 (N.D. Tex. 2019).

In support of her assertion that the continuing violation theory applies, Hale cites Eastep's solo walkabout of her building, which she alleges violated the directive from human resources that Eastep should not have contact with Hale unless another supervisor was present.[23] Hale's theory misses the mark for a rudimentary reason: the continuing violation theory renders her § 1983 claim timely only if Eastep engaged in acts that *contributed to the sexually hostile work environment claim* within the applicable limitations period based on the two-year period prior to filing her Complaint—that is, July 3, 2016, or later. *See Nat'l R.R.*, 536 U.S. at 117. As discussed above, the Title VII hostile work environment theory requires that an employee be subjected to unwelcome *sexual harassment*. *Seibert*, 851 F.3d at 437. Hale has not alleged, and does not claim in her brief, that Eastep's solo walkabout was a form of sexual harassment, i.e. that the harassment was sexual in nature. *See Pfeil v. Intecom Telecomms.*, 90 F. Supp. 2d 742, 748 (N.D. Tex. 2000) (quoting *Meritor*, 477 U.S. 57, 65) ("Sexual harassment by definition means unwelcome sexual

---

[23] Hale also cites Warden Anders's walkabout and Major West's investigation as harassing behavior that supports the continuing violation theory. Pl. Br. 43–44. The undersigned does not address this aspect of Hale's argument because it relies on the alleged conduct of individuals other than Eastep.

advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature."
(internal quotation marks and alterations omitted)); *see also Wyatt*, 297 F.3d at 413 (distinguishing
generic harassment from sexual harassment and holding that "complaints about shunning or
ostracism by fellow workers . . . [did] not implicate sexual harassment"); *Boh Bros. Constr.*, 731
F.3d at 460–61 (approving of jury instructions describing sexual harassment as harassment "based
on sex" but not necessarily "motivated by sexual desire" and includes "[d]iscriminatory
intimidation, ridicule, sexual advances, requests for sexual favors, or other verbal or physical
conduct of a sexual nature").[24]  Nor has Hale offered summary judgment proof in support of such
a claim.[25]  The undersigned therefore concludes that Hale's § 1983 claim against Eastep is time-
barred because the continuing violation theory does not apply to Eastep's alleged subsequent
conduct.  While this finding would dispose of Hale's § 1983 claim against Eastep, the undersigned
will address, in the alternative, Eastep's remaining defenses.

### 2. In the Event Hale's Claim is not Time-Barred, Eastep is not Entitled to Qualified Immunity.

"The qualified immunity analysis requires [the Court] first to determine whether [Hale's]
allegations, if true, establish a violation of a clearly established right." *Lauderdale*, 512 F.3d at
166 (internal quotation marks omitted).  Next, "the [C]ourt must decide whether the conduct was
objectively reasonable in light of clearly established law at the time of the incident." *Id.* (internal
quotation marks omitted).  Eastep asserts that he is entitled to qualified immunity because "[n]ot

---

[24] Although *Meritor* cited the Equal Employment Opportunity Commission's 1985 definition of sexual harassment, that definition remains the same today.  *See* 29 C.F.R. 1604.11(a) (2019).

[25] The undersigned also notes that Hale has never established a precise date for when the solo walkabout took place. Hale has only ever alleged that Eastep's solo walkabout occurred at the "end of June or in July 2016" or that it occurred in "early July."  Pl. Br. 43; Am. Compl. 9–10; Pl. App. 278.  Hale has the burden of showing that the continuing violation theory applies in this case.  *See Nat'l R.R.*, 536 U.S. at 107 ("To survive summary judgment under this test, [plaintiff] had to raise a genuine issue of disputed fact as to (1) the existence of a continuing violation—be it serial or systemic, and (2) the continuation of the violation into the limitations period." (internal quotation marks omitted)). The imprecision regarding *when* Eastep's solo walkabout allegedly occurred inures against Hale, given her burden.

every reasonable officer in his position would have known that his behavior created a hostile work environment." Defs. Br. 36. The Fifth Circuit, multiple district courts, and this Court disagree.

Hostile work environment claims made pursuant to Title VII and § 1983 are "parallel causes of action." *Johnson v. Halstead*, 916 F.3d 410, 417 (5th Cir. 2019) (quoting *Lauderdale*, 512 F.3d at 166). The elements of a hostile work environment claim under § 1983 are identical to those brought under Title VII, including the requirement that the alleged sexual harassment be severe or pervasive. *Matory v. Mason*, CIVIL ACTION NO. 3:19CV989TSL-RHW, 2018 WL 6493874, at *6 (S.D. Miss. Dec. 10, 2018). And just as the harassment must be severe or pervasive, a hostile work environment is actionable under § 1983 only when the environment is both objectively and subjectively offensive, meaning that the environment created is "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787; *Lauderdale*, 512 F.3d at 166 (applying the Title VII requirement that "actionable sexual harassment . . . must be objectively offensive" to a § 1983 hostile work environment claim (internal quotation marks omitted)). The Court analyzes Eastep's qualified immunity claim within this context.

The Court initially notes that sexual harassment is actionable under § 1983 because "sexual harassment in public employment violates the Equal Protection Clause of the Fourteenth Amendment." *Lauderdale*, 512 F.3d at 166 (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997)) (alteration brackets omitted). In addition, "[t]he right to be free of sexual harassment that creates a hostile work environment is clearly established and has been since the [Supreme] Court decided *Meritor* in 1986." *Id.* (citing *Meritor*, 477 U.S. at 66). The only remaining question is whether Eastep's "conduct was objectively reasonable in light of clearly established law at the time of the incident." *Id.* (quoting *Wallace v. Cty. of Comal*, 400 F.3d 284,

289 (5th Cir. 2005)). As the Court discussed above, when the facts are viewed in the light most favorable to Hale, Eastep subjected Hale to a hostile work environment that was objectively offensive. Notably, the Fifth Circuit has removed any doubt as to qualified immunity's availability where a plaintiff has alleged actionable sexual harassment that created a hostile work environment:

> Given that actionable sexual harassment under title VII must be objectively offensive, such behavior cannot be objectively reasonable for purposes of qualified immunity. Thus, qualified immunity can *never* offer protection for sexual harassment because, if it is actionable at all, the harassment is by definition objectively offensive and unreasonable, and qualified immunity protects only the objectively reasonable. Because we have already determined that [defendant's] alleged behavior is actionable under title VII and § 1983, we have necessarily determined that such behavior was objectively offensive and, therefore, not objectively reasonable. Thus, [defendant] is not entitled to qualified immunity.

*Id.* (internal citations, quotation marks, and ellipses omitted) (emphasis added); *see also Rice v. Fair*, CIVIL ACTION NO. 3:17-CV-932-DPJ-FKB, 2019 WL 1907458, at *4 n.2 (S.D. Miss. Apr. 29, 2019) (rejecting defendant's qualified immunity claim with citation to *Lauderdale*); *Matory*, 2018 WL 6493874, at *9 n.4 (same); *Taylor v. Miller*, Civil Action No. 3:12–CV–729–HTW–MTP, 2014 WL 2815701, at *3 (S.D. Miss. June 23, 2014) (same). The undersigned finds that, in the event Hale's § 1983 claim is not time-barred, Eastep's claim of qualified immunity should be denied.

### 3. Hale has Alleged an Actionable § 1983 Claim against Eastep

To succeed on a claim under § 1983, Hale must prove that Eastep (1) violated her rights secured by the laws or Constitution of the United States, and (2) acted under color of state law. *Lauderdale*, 512 F.3d at 165. As noted above, Title VII and § 1983 are parallel causes of action and the inquiries are the same for each. *Id.* at 166. Eastep claims he is entitled to summary judgment because Hale's underlying Title VII claim against TDCJ fails (Defs. Br. 34); however, as already found by the undersigned, Hale's claim against TDCJ survives TDCJ's Motion for

31

Summary Judgment and therefore provides no basis for dismissing Hale's § 1983 claim against Eastep.

## V.    Conclusion

After reviewing the parties' briefing and the summary judgment record, the undersigned concludes that Hale:  (1) has stated an actionable Title VII claim for sexual harassment against TDCJ; (2) has not stated an actionable claim for Title VII retaliation; and (3) is time-barred from bringing her § 1983 claim against Eastep.  However, if the district court determines that Hale's § 1983 claim is not barred by the statute of limitations, then the undersigned concludes that Hale has stated an actionable claim against Eastep for sexual harassment in violation of the Fourteenth Amendment and he is not entitled to qualified immunity.

## VI.    Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the United States District Court **GRANT in part and DENY in part** Defendants' Motion for Summary Judgment. ECF No. 38.

## VII.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December __3__, 2019

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE